**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| TERESA BENTON, <br><br>             Plaintiff, <br><br> vs. <br><br> EMILY VICKEY, in her official capacity as Executive Director of the FERNDALE HOUSING COMMISSION and the FERNDALE HOUSING COMMISSION, <br><br>             Defendants. | Case No.: <br><br><br> **COMPLAINT** |

**I.    PRELIMINARY STATEMENT**

1.1.    This case arises out of Defendant Ferndale Housing Commission's (FHC) wrongful conduct and discrimination in its administration of the Section 8 Housing Choice Voucher Program against TERESA BENTON.  FHC arbitrarily and with discriminatory impact refused to allow Ms. Benton to use her voucher for a rental home in Detroit where she had been residing for five years.  FHC found the neighborhood unsafe because of a boarded up house in the neighborhood, a house which had been boarded up each of the five previous years when FHC approved the home and the neighborhood.

1.2.    Plaintiff protested FHC's action because her rental home in Detroit was in good condition, the rent was reasonable, and family were active in the neighborhood.  Plaintiff felt safe in her home and community that she had known for 5 years.  FHC refused to meet with

COMPLAINT - 1

Plaintiff to discuss its decision to disapprove of the home or Plaintiff's objections. Without any discussion, FHC told Plaintiff she must find another house to rent.

1.3. FHC stopped payment to Plaintiff's landlord. Plaintiff did find another house in Detroit and requested inspection and approval, but FHC, again, said the house failed inspection because of a vacant house in the neighborhood. FHC also said it would not approve the rental amount and the landlord would have to accept $200 per month less than requested.

1.4. Plaintiff realized that FHC's new policy meant they would not approve houses in Detroit. Plaintiff contacted FHC to discuss this policy, and the FHC representative confirmed that the new policy was FHC would not approve any home if there was a vacant home within a three block radius of the home and urged Plaintiff to look in different "areas."

1.5. Plaintiff informed the FHC representative that Plaintiff wanted to stay in Detroit because her daughter was enrolled at Cass Technical High School in Detroit. The FHC representative told Plaintiff that Plaintiff should put her children "in a different school district."

1.6. Plaintiff stayed in her home in Detroit, paying the rent herself, for as long as she could. Finally, in May, 2014, Plaintiff was forced to move out of her home and move with her children to stay with other family members. Plaintiff and her children have been, in effect, homeless, since FHC stopped payment on Plaintiff's voucher and denied Plaintiff requests for extension of the voucher.

1.7. Through this action, Ms. Benton seeks to restore her voucher subsidy and find a home in Detroit, as FHC's actions violated U.S. Housing and Urban Development requirements and constitutional protections.

COMPLAINT - 2

1.8. Plaintiff requests declaratory and injunctive relief, as well as compensatory, special and punitive damages.

## II.   JURISDICTION

2.1. This court has subject-matter jurisdiction pursuant to 28 USC § 1331 and § 1343, and 42 USC § 3613.

2.2. Venue is proper under 28 USC § 1391.

## III.   PARTIES

3.1. Plaintiff, TERESA BENTON, is a citizen of the United States of America, residing in Detroit, Michigan.

3.2. Defendant, EMILY VICKEY , is the Executive Director of the Ferndale Housing Commission.

3.3. The FERNDALE HOUSING COMMISSION is a political subdivision of the City of Ferndale, State of Michigan, and doing business in Michigan pursuant to regulations promulgated by the U.S. Department of Housing and Urban Development (HUD).

## IV.   COMMON ALLEGATIONS

4.1. On or about November, 2005, Plaintiff received a Housing Choice Voucher from the Ferndale Housing Commission (FHC).  Plaintiff had lived in two homes approved by FHC and, after FHC approval, moved into her home at 15803 Prevost in Detroit in 2009.

COMPLAINT - 3

4.2.  Plaintiff had completed the approval process with FHC before moving into the Prevost house.  FHC sent inspectors for annual inspection of Plaintiff's house on Prevost each year in January, including 2010, 2011, 2012, and 2013.  Each year FHC confirmed that Plaintiff's home at 15803 Prevost passed inspection.

4.3.  In January, 2014, the inspector who had inspected Plaintiff's home on Prevost each of the previous years informed Plaintiff that this year Plaintiff's home would not pass inspection due to the vacant home in the neighborhood of Plaintiff's home.  This same vacant home had been a vacant home each of the previous years when Plaintiff's home passed the FHC inspection.

4.4.  Plaintiff's home at 15803 Prevost was in good condition and well-maintained.  The residents in the neighborhood consider their neighborhood to be safe.

4.5.  Plaintiff's home and the neighborhood were in the same shape as in the previous five years when both the home and neighborhood had passed FHC inspection.

4.6   Plaintiff is an African-American and that most her neighbors in her neighborhood in Detroit were and are African-American.

4.7.  On January 14, 2014, the FHC notified Plaintiff that her home had failed the annual recertification, stating: "The contract unit has failed to meet the housing Quality Standards of the Section 8 Housing Choice Voucher Program, and this office cannot continue Housing Assistance Payment contract on a unit that has abandoned and/or boarded up properties…"

COMPLAINT - 4

4.8. Plaintiff contacted FHC to ask why they were saying Plaintiff's home failed inspection now when it had passed in previous years, was in good shape and client wanted to remain in the home. FHC representative, Jennifer Mondy, told Plaintiff that this was their new policy and they were failing homes if there are vacant homes in the neighborhood so Plaintiff must move.

4.9. Plaintiff then looked for another home in the Detroit area and found one at Hubbell and Pembroke. Plaintiff asked FHC to inspect and approve that home. The same inspector from FHC came to this home and said the house also failed inspection because there was a vacant house on the next block.

4.10. Plaintiff realized that Ferndale Housing Commission was refusing to approve homes in Detroit. Plaintiff called Ferndale Housing Commission and spoke with Ms. Amber Pitrago, an employee of Ferndale Housing Commission, who told Plaintiff that the new policy of Ferndale Housing Commission was that there could be no abandoned houses within three blocks east or west of the block being inspected. If there were any vacant house within that three block radius, then the home would fail inspection for neighborhood standards.

4.11. Ms. Pitrago then asked Plaintiff why Plaintiff was not looking for homes in different "areas." Plaintiff informed Ms. Pitrago that Plaintiff and her daughter had worked very hard to get Plaintiff's daughter into Cass Technical High School in Detroit, that her daughter was attending that school and wanted very much to remain in that school. Plaintiff explained that she wanted to stay in Detroit and in the general neighborhood of the school so her daughter could continue her education there. Ms. Pitrago told Plaintiff they would not approve any homes if

COMPLAINT - 5

there vacant or abandoned homes anywhere in the area so Plaintiff should put her children in "a different school district." Plaintiff is African-American and her children are African-American. The school district and the school are majority African-American.

4.12. Plaintiff could not find any houses in Detroit or the 48227 zip code in Detroit, which Ferndale Housing Commission would approve. Plaintiff continued to stay at her home at 15803 Prevost in Detroit. Plaintiff struggled to pay the rent for the home, after Ferndale Housing Commission stopped paying on the voucher.

4.10. The rent on the home was $750 per month, and Plaintiff could not afford to continue paying. In May, 2014 Plaintiff no longer could afford the rent, because Ferndale Housing Commission had stopped paying on the voucher some months before. Plaintiff and her children became homeless and now live with a family member in Detroit. Plaintiff has been able to keep her daughters in their schools in Detroit, but it has been very difficult to be forced to move from a home they liked and to move in with family members so they are not on the street. Plaintiff seeks to have her voucher reinstated and to be able to find a decent, affordable home she can rent in Detroit.

4.11. As a direct and proximate result of the conduct of defendants, Plaintiff BENTON has sustained damages, including, but not limited to, humiliation, anxiety, emotional distress, mental anguish, deprivation of her rights, physical pain and suffering, homelessness and eviction from her home.

COMPLAINT - 6

V. **CLAIMS FOR RELIEF**

Count I: Violation of Procedural Due Process – 14th Amendment of the U.S. Constitution

5.1. Plaintiff's participation in and receipt of Housing Choice Voucher assistance is a property interest protected by the due process clause of the 14th Amendment to the U.S. Constitution.

5.2. Defendants are governmental actors; at all relevant times Defendant Emily Vickey acted under the color of law in her capacity as Executive Director of the Ferndale Housing Commission.

5.3. Defendant's refusal to meet with Plaintiff regarding this decision or to explain the decision and Defendant's refusal to allow Plaintiff an opportunity to provide mitigating circumstances for why she should be allowed to stay in her home of seven years violates Plaintiff's right to due process under the Housing Choice Voucher Program. This Due Process right is implicit in the "housing choice" policy underlying the entire voucher program pursuant to 24 CFR, §982.353(f).

5.4. Where, as in this case, the impact of FHC's decision is to force Plaintiff to move or give up her voucher, fairness and due process dictates that FHC should hear from the tenant who will be adversely affected by the decision. FHC refused Plaintiff's request for a meeting, a discussion or a hearing on this issue.

5.5. In rescinding Plaintiff's Voucher, and in refusing to review that decision or provide Plaintiff with a hearing or an opportunity to defend herself at a hearing, Defendants were

COMPLAINT - 7

acting under color of state law; accordingly, their conduct violates the Due Process Clause of the Fourteenth Amendments to the U.S. Constitution, in violation of 42 USC § 1983.

Count II. Violation of Substantive Due Process – 14th Amendment of the U.S. Constitution

5.6. Defendant FHC terminated Plaintiff's Section 8 contract and Housing Choice Voucher payments to Plaintiff's landlord based on alleged violation of Housing Quality Standards when Defendant failed even to inspect Plaintiff's home.

5.7. FHC's action in terminating payment of the subsidy to Plaintiff's landlord denied Plaintiff the right to use the subsidy in her home of seven years.  In difficult housing markets such as Detroit, where good, alternative, reasonably priced housing, equivalent to Plaintiff's current home,  is impossible to locate, the termination of the landlord's contract was in effect termination of the subsidy as well.

5.8. Pursuant to 24 CFR § 982.401(4)(iv), Public Housing Authorities such as FHC cannot use Site and Neighborhood Standards which "severely restrict housing choice." FHC's Site and neighborhood standards do severely restrict housing choice in violation of 24 CFR § 982.401(4)(iv).

5.9. FHC's determination to deny approval for the subject rental home violated Plaintiff's substantive due process as the decision was arbitrary, capricious, and lacked any proper basis.

COMPLAINT - 8

Count III. Violation of the United States Housing Act

5.10. Pursuant to 42 USC 1437f(o)(8)(B), Housing quality standards are standards for safe and habitable housing established the Secretary or by local housing codes or by codes adopted by public housing agencies that: "(ll) do not severely restrict housing choice." Where FHC apparent guidelines find that a good house in a stable neighborhood in Detroit fail to meet FHC guidelines because there is a vacant house in the area, does severely restrict housing choice in violation of 42 USC 1437f(o)(8)(B).

5.11. Pursuant to 24 CFR 982.401(4)(iv), Public Housing Authorities such as FHC cannot use Site and Neighborhood Standards which "severely restrict housing choice." FHC's Site and neighborhood standards do severely restrict housing choice in violation of 24 CFR 982.401(4)(iv).

5.12. HUD's Housing Choice Voucher Guidebook (7420.10g) states as follows at Chapter 10-13 on Site and Neighborhood and Acceptability Criteria: "PHAs should be careful not to restrict housing choice in deciding acceptability. Failing a unit because the neighborhood is considered "bad" is not appropriate

5.13. In the case of Plaintiff, her home was in excellent condition, had been approved by FHC for six years in a row and now, in the seventh year, FHC says Plaintiff must move because FHC considers the neighborhood "bad" with a vacant building on the next street. FHC is in violation of the United States Code, the Code of Federal Regulations and HUD's Guidebook.

COMPLAINT - 9

Count IV. Violation of Fair Housing Act

5.14.  Defendant's policy and practice of denying Plaintiff and her family, who are African-American, the right to live in good housing in Detroit, which is more than 80% African-American, makes unavailable and denies rental housing because of race, in violation of the Fair Housing Act, 42 U.S.C. Sect. 3604(a).

5.15.  Defendant's policy and practice of discriminating in the terms, conditions, or privileges of the rental of a dwelling because of race, where Defendant refuses to approve good housing because the housing is in Detroit which is a predominately African-American city, is a violation of the Fair Housing Act, 42 U.S.C. Sect. 3604(b).

5.16.  Plaintiff and her children have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

5.17.  Defendants' conduct was intentional, willful, and make in reckless disregard for the known rights of others.

5.18.  FHC's policy of finding that good housing does not pass the Housing Quality Standards inspection for site and neighborhood if there is a vacant house in the neighborhood has a discriminatory impact on classes of African-American and other minority residents of the City of Detroit, of which class, Plaintiff is a member.

5.19.  FHC's policy of stopping voucher payments where the house is in excellent shape and has been approved for voucher payments for six years in a row because an inspector found a vacant building in the neighborhood is not reasonably related to the FHC's legitimate mission of providing safe and affordable housing.

COMPLAINT - 10

5.20. Defendants' actions give rise to a cause of action under 42 USC Sect. 3604 and 3613 and 42 USC Sect. 1983 for declaratory and injunctive relief, damages and attorney's fees.

**REQUEST FOR JURY TRIAL**

Plaintiff requests jury trial in this matter.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff does request that the Court order as follows:

A. Order that the acts complained of herein, violate Plaintiff's Constitutional rights of Due Process, as well as her statutory rights under the Housing Act.

B. Order that the acts complained of herein, violate Plaintiff's rights under the Fair Housing Act, 42 U.S.C. Sect. 3601, et. seq., and discriminate against Plaintiff and her family based on race.

C. Issue Order permanently enjoining Defendant from engaging in the conduct describe above and ordering it to take all affirmative steps necessary to remedy the effects of the conduct described above and to prevent additional occurrences of such conduct or similar conduct.

D. Award all available damages to Plaintiff, including but not limited to punitive damages in an amount that would punish Defendant for the willful, wanton and reckless conduct alleged herein and that would effectively deter similar conduct in the future.

E. Award reasonable attorneys' fees and costs under 42 U.S.C. Sect. 3613(c).

COMPLAINT - 11

F.  Issue an emergency temporary restraining order as well as preliminary and permanent injunctions, requiring Defendants to reinstate Plaintiff BENTON'S voucher and to continue making housing assistance payments on behalf of Plaintiff BENTON.

G.  Award compensatory, special and punitive damages to Plaintiff in that amount as is just, fair and equitable.

H.  Such other and further relief as this court deems equitable.

Dated this 14 of January, 2015.

/s/ Robert Day
Robert Day (P44222)
Attorney for Plaintiff
613 Abbott
Detroit, MI 48226
313-967-5642
rday@ladadetroit.org

COMPLAINT - 12